**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**


MELISSA OLLILA,                                    Civ. No. 09-3394 (JNE/AJB)

        Plaintiff,


v.                                                           <u>**REPORT AND RECOMMENDATION**</u>


MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____

## INTRODUCTION

Plaintiff Melissa Ollila disputes the unfavorable decision of the Commissioner of Social

Security, denying her application for disability insurance benefits ("DIB"). The matter is before

this Court, United States Magistrate Judge Arthur J. Boylan, for a report and recommendation to

the District Court on the parties' cross-motions for summary judgment. <u>See</u> 28 U.S.C. §

636(b)(1) and Local Rule 72.1. Plaintiff is represented by Jennifer Mrozik, Esq. Defendant is

represented by Lonnie F. Bryan, Assistant United States Attorney. This Court has jurisdiction

under 42 U.S.C. § 405(g). Based on the reasoning set forth below, this Court recommends that

Plaintiff's motion for summary judgment [Docket No. 15] be denied, and Defendant's motion for

summary judgment [Docket No. 22] be granted.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on November 30, 2006.

(Tr. 81-83.)[1]  She alleged disability from diabetes, back injury and depression.  (Tr. 128.)  Her application was denied initially and upon reconsideration.  (Tr. 42-46, 53-55.)  Plaintiff timely requested a hearing before an administrative law judge, and the hearing was held on January 8, 2009, before Administrative Law Judge David K. Gatto ("ALJ").  (Tr. 22-37.)  The ALJ issued an unfavorable decision on April 27, 2009.  (Tr. 9-21.)  On October 9, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3.)  See 20 C.F.R. § 404.981.  On November 30, 2009, Plaintiff sought review from this Court.  The parties thereafter filed cross-motions for summary judgment.

## PLAINTIFF'S BACKGROUND AND MEDICAL HISTORY

Plaintiff was born on December 26, 1969, and was 37-years-old on the date she filed her application for disability insurance benefits.  (Tr. 81.)  She obtained her GED in 1994.  (Tr. 132.)  Plaintiff is married and has two children.  (Tr. 222.)  She has past relevant work as a cashier, a teller, and a lunch room supervisor.  (Tr. 129.)   She took a leave of absence from her part-time job as a lunchroom supervisor on April 12, 2006, due to her medical impairments.  (Tr. 128.)  She alleged she cannot work because she is unable to stand and walk for an extensive period of time, and she can lift only two pounds.  (Id.)

Plaintiff was evaluated by Dr. Cameron McConnell at MINNHEALTH Afton on July 27, 2005, before her alleged disability onset date.  (Tr. 205.)  Plaintiff reported that she was ready to do something about her diabetes.  (Id.)  Dr. McConnell noted that Plaintiff had infrequent low

_____

[1]        The Court will cite the Administrative Record in this matter, Docket No. 9, as "Tr."

2

blood sugar reaction, and Plaintiff recognized when she was having such and episode and treated it promptly. (Id.) On examination, Plaintiff was alert and in no acute distress. (Id.) Plaintiff stated her eating was somewhat out of control, and she was ready to consider stomach stapling. (Id.)

On October 5, 2005, Plaintiff underwent psychological testing for bariatric surgery candidates with Dr. Nancy Hammond . (Tr. 222- 32.) Plaintiff was pursuing bariatric surgery to get her blood sugars under control, be more physically fit, and improve her quality of life with respect to lower cholesterol, reduced extremity swelling, and to improve right ankle pain, and occasional low back pain. (Tr. 222.) Dr. Hammond diagnosed adjustment stress related to health issues, morbid obesity, and a GAF score of 78.[2] (Tr. 222-23) She found no psychological reason why Plaintiff should not have bariatric surgery. (Tr. 223.) She noted that Plaintiff was a very pleasant person from a stable, loving family. (Id.) She also noted that Plaintiff had one episode of depression related to family stressors, which was successfully treated approximately two years ago. (Tr. 223-24.) Plaintiff appeared highly motivated. (Id.)

Plaintiff described her physical and sedentary activities. (Tr. 226.) She walked and worked in her garden but was limited by ankle and low back pain. (Id.) She wanted to be able to play ball with her children, play softball, and go bike riding and rollerblading. (Id.) Her leisure activities included watching television and movies, reading, playing games, doing crafts, and visiting friends. (Id.) She watched television less than two hours a day, and spent fifteen to

---

[2]     According to the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. Text Revision 2000), Global Assessment of Functioning ("GAF") scores of 71 to 80 reflect that "if symptoms are present, they are transient and expectable reactions to psycho-social stressors. . ."no more than slight impairment in social, occupational, or school functioning."

thirty minutes on a computer.  (Id.)

Plaintiff took a personality test, which indicated a marginally valid profile of a person with a tendency to "put the best foot forward," with either reduced insight and overuse of repression of negative feelings or a very high level of life satisfaction.  (Tr. 230.)  Plaintiff's mental status was normal.  (Tr. 230-31.)

Plaintiff had a diabetes check on March 30, 2006.  (Tr. 217-18.)  She reported occasional, mild episodes of hypoglycemia, which resolved with home treatment.  (Tr. 217.)  She exercised daily on a treadmill.  (Id.)  On examination, Plaintiff was pleasant and in no acute distress.  (Id.)  Plaintiff had slight numbness in her feet, but her examination was otherwise normal.  (Id.)  Dr. McConnell diagnosed diabetes mellitus type II, benign hypertension, hyperlipidemia, and asthma.  (Id.)

On April 21, 2006, Plaintiff saw Dr. McConnell and reported having low back pain radiating into the leg on the right side, aggravated by movement for the last five days.  (Tr. 214.)  On examination, Plaintiff displayed decreased segmental motion, decreased lateral bend on the right, flexion of forty to fifty degrees, no spasm, no tenderness, normal motor exam and gait, but diminished reflexes of the right knee.  (Id.)  Dr. McConnell diagnosed lumbago and prescribed Vicodin and Skelaxin.  (Id.)

Plaintiff saw Dr. John Dickhudt at MINNHEALTH Afton on April 28, 2006.  (Tr. 213.)  She reported that she hurt her back cleaning her deck on April 15.  (Id.)  Plaintiff complained of radiating pain on the right side, and tingling and numbness on the right, down to the foot.  (Id.)  On examination, Plaintiff's range of motion of the lumbar spine had not changed since her last visit, she had no spasm or tenderness, her motor exam, reflexes, gait, and toe and heel walk were

4

normal.  (Id.)  She was tender on the right sciatic notch.  (Id.)  Dr. Dickhudt prescribed a Medrol

Dosepak and Skelaxin.  (Id.)

In follow up on May 3, 2006, Plaintiff complained of low back pain with radiation to her

knee, aggravated by movement for the last two weeks.  (Tr. 211.)  Plaintiff denied tingling and

numbness but reported bilateral edema.  (Id.)  Plaintiff was taking Ibuprofen for pain.  (Id.)  On

examination of the lumbar spine, Plaintiff's flexion was eighty to ninety degrees, extension was

ten degrees, side bending and rotation were normal, there was no tenderness or spasm, motor

exam and gait were normal, straight leg raise test was positive on the right at 45 degrees, with

slightly decreased knee jerk on the right.  (Id.)  Dr. McConnell noted he would order an MRI, if

Plaintiff's sciatica was not substantially better in a week.  (Id.)

Plaintiff saw Dr. McConnell for follow up on her back and diabetes on August 31, 2006.

(Tr. 209.)  Plaintiff's blood sugars were elevated, and Plaintiff denied hypoglycemia.  (Id.)

Plaintiff complained of back pain for the last four months.  (Id.)  Her back pain was on the right

side, and it increased with activity or standing, and radiated to the knee.  (Id.)  Plaintiff also

complained of chronic tingling and numbness in her feet, which Dr. McConnell noted might be

related to her diabetes.  (Id.)  Plaintiff stated she would not have gastric bypass surgery until her

back was better.  (Id.)

On examination, Plaintiff was obese at 286 pounds, and she exhibited diffuse numbness

in her feet.  (Tr. 209.)  Plaintiff moved in a guarded fashion, and examination of her lumbar

spine revealed normal side bending, flexion thirty degrees, extension ten degrees, tenderness on

the right, straight leg raise positive on the right, normal motor exam and reflexes, and gait

favoring the affected side.  (Id.)  Dr. McConnell diagnosed sciatica, obesity, and diabetes

mellitus type 1.  (Id.)  She noted that x-rays of Plaintiff's lumbar spine indicated mild arthritic spurring and no disc space narrowing or acute pathology.  (Tr. 210.)  She referred Plaintiff to the Courage Center for physical therapy.  (Id.)  She also recommended a healthy diet and thirty minutes of cardio-exercise three or four times a week.  (Id.)

Plaintiff began aquatic physical therapy at the Courage Center on November 30, 2006. (Tr. 242-48.)  Plaintiff had physical therapy on January 29, 2007, the day after she slipped on ice and hurt her lower back.  (Tr. 242.)  She was pain free at the end of the session.  (Id.)  A week later, Plaintiff was sleeping better, she could stand for more than fifteen minutes, and she continued to increase her walking.  (Id.)

On February 16, 2007, Dr. P.E. Shields, a state agency psychologist, completed a Psychiatric Review Technique Form and Mental Residual Functional Capacity Form regarding Plaintiff at the request of the SSA.  (Tr. 252-69.)  He concluded that Plaintiff had an affective disorder under paragraph A of Listing 12.04.  (Tr. 252, 255.)  Under the paragraph B criteria of the Listing, he opined that Plaintiff had mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace.  (Tr. 262.)  Dr. Shields opined that Plaintiff had the mental residual functional capacity to concentrate on, understand, and remember routine, repetitive, and three and four step instructions; carry out routine, repetitive, and three or four step tasks with adequate persistence or pace; interact with brief, infrequent, and superficial contact with coworkers; follow an ordinary routine with the ordinary level of supervision found in most customary work settings; and handle the routine stressors of a routine, repetitive work setting.  (Tr. 268.)

Plaintiff saw Dr. McConnell for back pain on March 1, 2007, and reported that she fell twice the past week due to leg weakness. (Tr. 279.) She complained of right lower back pain, radiating down the right leg, and tingling and numbness. (Id.) Examination of her lumbar spine revealed extension of ten degrees, flexion reduced to thirty degrees, side bending normal, lumbosacral tenderness on the right, straight leg raise test positive at thirty degrees on the right, motor exam diminished on the right, and normal gait. (Id.) Plaintiff was in no acute distress. (Id.) Plaintiff also reported elevated blood sugars and no hypoglycemic reactions. (Id.) Dr. McConnell diagnosed diabetes, sciatica, benign hypertension and hyperlipidemia. (Id.) He referred Plaintiff for an MRI, which showed L5-S1 right paracentral disc extrusion pinching the foramen. (Tr. 280, 289.)

Plaintiff had an MRI of her lumbar spine with and without contrast at Woodwinds Health Campus on March 12, 2007. (Tr. 290-91, 294-95.) The MRI revealed a moderate sized right paracentral disc extrusion at L5-S1, displacing and partially compressing the right S1 nerve root, which accounted for the S1 radiculopathy. (Tr. 291.) The disc extrusion abutted the undersurface of the exiting right L5 nerve root in the L5-S1 neural foramen. (Id.) There was also a small disc protrusion at L4-5, without evidence of neural impingement. (Id.)

Plaintiff then saw Dr. Daniel Hanson at St. Croix Orthopaedics on March 20, 2007. (Tr. 297.) Plaintiff indicated that her leg pain, paresthesias, and weakness of the right leg began on April 15, 2006, and was increasing. (Id.) She reported that her resting pain was moderate and activity pain severe. (Id.) Physical therapy had not helped, and she had a bad reaction to steroids. (Id.) On examination, there were no signs of acute distress. (Tr. 298.) Plaintiff was neurologically intact, with normal strength and sensation. (Id.) There was no tenderness of the

lumbar spine.  (Id.)  Plaintiff's gait was normal, and there was no pain with hip and knee range of motion, which was full.  (Tr. 299.)

Dr. Hanson reviewed Plaintiff's MRI of March 12, 2007, and x-rays of her lumbar spine performed on March 20.  (Tr. 299.)  He assessed right L5-S1 disk herniation and right S1 radiculopathy.  (Id.)  Dr. Hanson noted that Plaintiff had profound weakness in her right hamstring, associated paresthesias, and painful radicular symptoms.  (Id.)  Plaintiff said she wanted to proceed with a right L5-S1 microlumbar diskectomy and decompression of the right S1 nerve root.  (Id.)

On May 9, 2007, Dr. Charles Grant completed a Physical Residual Functional Capacity Assessment regarding Plaintiff at the request of the SSA.  (Tr. 304-12.)  He concluded, based on Plaintiff's recent MRI and physical examination, that she could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk six hours total in an eight hour workday, and sit six hours total in an eight hour workday.  (Tr. 306.)  He also opined that she should never balance or climb ladders, ropes or scaffolds.  (Tr. 307.)

Plaintiff saw Dr. McConnell for a diabetes check on August 10, 2007.  (Tr. 346.)  She was exercising daily on a treadmill, and her lumbar pain was improving.  (Id.)

Plaintiff had a physical examination by Dr. McConnell on November 9, 2007.  (Tr. 343-45.)  Her blood sugars were generally better.  (Tr. 343.)  Plaintiff was on a diet and walking daily for exercise.  (Id.)  She reported chronic back pain, improving with Tai Chi.  (Id.)  On physical examination, she had some numbness in her right heel.  (Tr. 344.)  She had normal range of motion in the thoracic and lumbar spine.  (Id.)  Her neurological examination was normal.  (Id.)

Plaintiff underwent a consultative physical examination on January 11, 2007, with Dr.

Alford Karayusuf, at the request of the Social Security Administration. (Tr. 237-39.) Plaintiff reported that she slept only two or three hours each night, never felt rested, and her appetite was diminished, especially since her father died in October 2006. (Tr. 238.) She continued to have low back pain, radiating down her right leg, which she treated with Ibuprofen. (Tr. 237-38.)

Plaintiff described her daily activities. (Tr. 238.) She bathed every day and did a minimal amount of cooking. (Id.) Her husband and children did the housework. (Id.) Plaintiff occasionally played cards with her children, she watched television two hours a day, read three to four hours a day, and could no longer garden or do crafts. (Id.) She talked to her sister on the phone daily, and her mother visited frequently. (Id.) Her mental status examination was normal. (Tr. 238-39.) Dr. Karayusuf diagnosed adjustment disorder with depressed mood. (Tr. 239.) He opined that based on Plaintiff's psychiatric and physical condition, she could understand, retain and follow simple instructions, interact appropriately with fellow workers, supervisors, and the public, and maintain pace and persistence. (Id.)

Plaintiff had a diabetes check on March 13, 2008. (Tr. 340-42.) She had occasional hypoglycemia, and it was worse the past week when she was ill. (Tr. 340.) She was exercising once weekly at the Courage Center, and walking three times a week. (Id.) On examination, Plaintiff's lumbar range of motion was decreased, she was tender at the right SI joint, and her gait was normal. (Tr. 341.)

When Plaintiff saw Dr. McConnell on June 20, 2008, she had intentionally lost weight. (Tr. 338.) Her sugars were low in the mid-mornings. (Id.) She reported no fatigue or sleep loss. (Id.) She had back pain "off and on" but not as bas as it had been. (Id.) Plaintiff exercised by walking and swim aerobics. (Id.)

On September 12, 2008, Plaintiff reported that she was walking and doing swim aerobics and Tai Chi for exercise. (Tr. 334.) She was not having numbness or tingling in her feet but had ankle pain and tingling with walking. (Id.) She had lumbar pain, with some pain and numbness into the right leg when walking. (Id.) Range of motion of her lumbar spine was reduced, but Plaintiff's examination was otherwise normal. (Tr. 335.) Plaintiff was noted to have a high stress level, and that she was "still seeing a therapist regularly." (Tr. 334.) Dr. McConnell noted that Plaintiff could have surgery for sciatica, but she decided to go on with Tai Chi. (Tr. 336.)

Plaintiff saw Dr. McConnell on October 10, 2008, primarily for disability paperwork. (Tr. 331-33.) Plaintiff reported that her pain was aggravated with movement and relieved with rest. (Tr. 331.) She chose not to undergo surgery because she was concerned about her diabetes and obesity. (Id.) Plaintiff's examination was normal, and she was not in acute distress. (Tr. 332.) Contrary to her last visit, she was noted not to be depressed or have a high stress level. (Tr. 331.) Dr. McConnell stated that she supported Plaintiff's disability and hoped she could do better and avoid surgery by losing weight. (Tr. 332.)

Dr. McConnell completed a Medical Assessment of Ability to Do Work-Related Activities (Physical) form regarding Plaintiff on October 10, 2008. (Tr. 317-20.) She opined that Plaintiff could work a total of four hours a day, and stand for one hour a day, with five to ten minutes of standing or walking without interruption. (Tr. 317.) She could lift and carry ten pounds occasionally and five pounds frequently. (Tr. 318.) She should never crouch, kneel or crawl and only occasionally climb stairs, balance, stoop, push or pull. (Tr. 317-19.) These limitations were based on the MRI finding of nerve root impingement. (Tr. 317-18.) Based on Plaintiff's leg and foot numbness, Dr. McConnell opined that Plaintiff would be limited to four

hours of sitting at work a day, one hour without interruption.  (Tr. 318.)  She opined that Plaintiff

should avoid heights because her leg could give way, and avoid dust and fumes due to allergies.

(Tr. 319.)  She should also avoid vibrations, because it hurt her back.  (<u>Id.</u>)  Dr. McConnell

further noted that Plaintiff had insulin dependent diabetes and required frequent meals,

medication and glucose testing.  (Tr. 320.)

Plaintiff had a physical examination on December 8, 2008.  (Tr. 327-30.)  Her blood

sugars were "good."  (Tr. 327.)  Her complaints included migraines and tingling and numbness

of three fingers when writing.  (<u>Id.</u>)  All other systems, including musculoskeletal, were

negative.  (<u>Id.</u>)  Neurological examination, sensory examination, and strength were normal.  (Tr.

328-29.)  Dr. McConnell prescribed Maxalt for migraines.  (Tr. 330.)

On January 21, 2009, Plaintiff saw Dr. McConnell to fill out forms for insurance.  (Tr.

325-26.)  On examination, Plaintiff was pleasant and in no acute distress.  (Tr. 325.)

**TESTIMONY AT THE ADMINISTRATIVE HEARING**

Plaintiff testified to the following at the hearing before the ALJ.  She does not have any

formal education beyond her GED, and she has not worked since April 15, 2006.  (Tr. 25.)  Her

last job, which ended because of her back injury, was for a school district and was part-time.

(Tr. 26-27.)  Prior to that, she was a bank teller and a cashier.  (<u>Id.</u>)  Plaintiff was only working

part-time in 2006, because she had frequent high blood sugars from diabetes.  (Tr. 27-28.)  She

had low blood sugar episodes two or three times a week.  (Tr. 28.)  It could take up to an hour to

get her blood sugar within a normal range, once she recognized the symptoms and had

something to eat or drink.  (<u>Id.</u>)  She cannot do anything when her blood sugar is low.  (Tr. 32.)

She has episodes of high blood sugar daily, which causes headaches and vision problems.  (Tr.

33.)

On a typical day, Plaintiff meditates, reads, helps her children with schoolwork, and does some housework.  (Tr. 28.)  She scrapes dishes and puts them in the sink, folds laundry, dusts, and tries to make her bed.  (Tr. 28-29.)  Her husband and children do the remainder of the housework and the grocery shopping.  (Tr. 29.)  Her daughter and husband do the cooking, but Plaintiff will make herself something in the microwave.  (Id.)  Plaintiff did not have back surgery because there was no guarantee it would resolve her back pain, and she had other health problems creating more risk with surgery.  (Id.)  Since March 2007, Plaintiff's back treatment was primarily home exercise and pool exercise.  (Tr. 29-30.)

When Plaintiff sits for an hour, her feet go numb, and she has to get up and walk for no more than ten minutes.  (Tr. 30.)  She puts her feet up as much as possible when sitting.  (Id.)  She also spends about half the day lying on her bed with her foot elevated.  (Tr. 31.)  About half of the week, Plaintiff cannot do the things she planned because either her blood sugars are off or her back hurts.  (Tr. 34.)  Plaintiff noted she did not go to the doctor more frequently for her back, because she was told there was nothing more to be done.  (Tr. 32.)

After the hearing, Vocational Expert Mitchell Norman responded to written interrogatories.  (Tr. 196-200.)  The interrogatories contained three hypothetical questions concerning whether someone of Plaintiff's age, education, work experience, and certain physical and mental limitations could perform her past relevant work or any other work existing in significant numbers in the economy.  (Id.)  The physical and mental limitations in the first hypothetical question were as follows:

> [T]he full range of light work . . . requiring lifting and carrying 20 pounds, occasionally, and 10 pounds, frequently with no climbing

of ladders, ropes or scaffolds, occasional climbing of stairs and ramps, no balancing, occasional stooping, kneeling, crouching or crawling, and who is further limited by depression resulting in the need for unskilled work with brief and superficial contact with co-workers, and no rapid or frequent changes in work routine to account for reduced stress tolerance.

(Tr. 196.)  The VE responded that such a person could not perform Plaintiff's past relevant work because it required public contact, but such a person could perform the jobs of paper cutter, [Dictionary of Occupational Titles] DOT # 640.565-010 with 2,970 such jobs in the state, and assembler, small products, DOT #706.684-022 with 10,860 such jobs in the state.  (Tr. 197.)

The second hypothetical question contained the following physical and mental limitations:

[S]edentary work requiring lifting no more than 10 pounds at a time, either occasionally or frequently, with no climbing of ladders, ropes or scaffolds, occasional climbing of stairs and ramps, no balancing, occasional stooping, kneeling crouching or crawling, and who is further limited by depression resulting in the need for unskilled work with brief and superficial contact with co-workers, and no rapid or frequent changes in work routine to account for reduced stress tolerance.

(Tr. 197.)  The VE responded that such a person could not perform Plaintiff's past relevant work, but could perform other work including automatic bonding machine operator, DOT# 726.685-066, with 1,040 such jobs in the state, and P.C. board assembler, DOT# 726.684-110, with 4,820 such jobs in the state.  (Tr. 198.)

The final hypothetical question to the VE contained the following physical and mental limitations:

[T]he full range of sedentary work . . . but who in addition to the limitations described in the First and Second Hypothetical Questions is also limited to 4 hours of work in an 8 hour workday with sitting limited to 1 hour, and standing and walking limited to

> 4 hours in an 8 hour workday and no more than 5 to 10 minutes
> continuously, and who is further limited by depression resulting in
> the need for unskilled work with brief and superficial contact with
> co-workers, and no rapid or frequent changes in work routine to
> account for reduced stress tolerance.

(Tr. 198.)  The VE responded there were no jobs such a person could perform.  (Tr. 199.)

**THE ALJ'S DECISION**

On April 27, 2009, the ALJ issued his decision denying Plaintiff's application for supplemental security income.  (Tr. 9-21.)  The ALJ followed the five-step sequential evaluation set forth in the agency's regulations.  See 20 C.F.R. § 404.1520.  The Eighth Circuit Court of Appeals has summarized these steps as follows: (1) whether the claimant is currently engaged in "substantial gainful activity"; (2) whether the claimant suffers from a severe impairment that "significantly limits the claimant's physical or mental ability to perform basic work activities"; (3) whether the claimant's impairment "meets or medically equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education and work experience)"; (4) whether the claimant has the residual functional capacity ("RFC") to perform his or her relevant past work; and (5) if the ALJ finds that the claimant is unable to perform his or her past relevant work, then the burden is on the ALJ "to prove that there are other jobs in the national economy that the claimant can perform."  Fines v. Apfel, 149 F.3d 893, 894-95 (8th Cir. 1998).

At the first step of the evaluation process, the ALJ determined that the claimant has not engaged in substantial gainful activity since April 15, 2006, the application date.  (Tr. 14.)  At the second step of the process, the ALJ found that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine with radiculopathy, type I diabetes, obesity, and

adjustment disorder.  (Id.)

At the third step of the evaluation, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 15-16.)  Specifically, the ALJ considered Listing 12.04, affective disorders, but found Plaintiff to have only mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in concentration, persistence or pace.  (Tr. 15.)  The ALJ also found there was no evidence of the paragraph C criteria of Listing 12.04.  (Id.)

At the fourth step of the evaluation process, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and further limited to occasional climbing of stairs and ramps, stooping, kneeling, crouching and crawling, avoiding climbing ropes, ladders and scaffolds and balancing, unskilled work with brief and superficial contact with coworkers, and no rapid or frequent changes in work routines to account for reduced stress tolerance.  (Tr. 16.)  The ALJ found that Plaintiff could not perform her past relevant work.  (Tr. 20.)  Based on the vocational expert's testimony, the ALJ found that Plaintiff could perform other work that exists in substantial numbers in the national economy including paper cutter and small products assembly, and such jobs exist in significant numbers in the economy.  (Tr. 20-21.)  Thus, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security act.  (Tr. 21.)

**DISCUSSION**

### Standard of Review

Review by this Court is limited to a determination of whether a decision of the ALJ is

supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); <u>Murphy v.</u>

<u>Sullivan</u>, 953 F.2d 383, 384 (8th Cir. 1992).  Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>, 402

U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).

"The substantial evidence test employed in reviewing administrative findings is more than a

mere search of the record for evidence supporting the [Commissioner's] findings." <u>Gavin v.</u>

<u>Heckler</u>, 811 F.2d 1195, 1199 (8th Cir. 1987).  "'Substantial evidence on the record as a whole,'

. . . requires a more scrutinizing analysis."  <u>Id.</u>

  In reviewing the record for substantial evidence, the Court may not substitute its own

judgment or findings of fact.  <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993).  The Court

should not reverse the Commissioner's finding merely because evidence may exist to support the

opposite conclusion.  <u>Mitchell v. Shalala</u>, 25 F.3d 712, 714 (8th Cir. 1994); <u>see</u> <u>also</u> <u>Woolf</u>, 3

F.3d at 1213 (the ALJ's determination must be affirmed, even if substantial evidence would

support the opposite finding.)  Instead, the Court must consider "the weight of the evidence in

the record and apply a balancing test to evidence which is contrary."  <u>Gavin</u>, 811 F.2d at 1199.

  The claimant bears the burden of proving his or her entitlement to disability benefits.  <u>See</u>

20 C.F.R. § 404.1512(a); <u>Thomas v. Sullivan</u>, 928 F.2d 255, 260 (8th Cir. 1991).  Once the

claimant has demonstrated he or she can not perform prior work due to a disability, the burden of

proof shifts to the Commissioner to show that the claimant can engage in some other substantial

gainful activity.  <u>Martonik v. Heckler</u>, 773 F.2d 236, 239 (8th Cir. 1985).

  **<u>Analysis</u>**

Plaintiff raises three main arguments: 1) the ALJ failed to give proper weight to the treating physician's opinion and improperly substituted his own opinion; 2) the ALJ failed to fully and fairly develop the record by failing to consider whether Plaintiff's combined impairments equaled a Listing; 3) the ALJ failed to follow proper principles of law in determining Plaintiff's credibility. The Court will address these arguments in the order of the five-step disability evaluation process.

## Listed Impairments

The regulations provide that certain impairments are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Such conditions are described in the Listing of Impairments, 20 C.F.R. § 404, Subpart P, Appendix 1.

Plaintiff asserts that Dr. McConnell opined that her diabetes and lumbar spine impairment limit her to working at less than a sedentary exertional level on a part-time basis, but the ALJ failed to obtain expert testimony with regard to her combination of impairments to determine if she equaled a listing. Plaintiff further notes that additional medical records were submitted to the SSA after a state agency consultant from the D.D.S. reviewed the case and determined that Plaintiff did not meet or equal a listing. Plaintiff concludes that, based on Social Security Ruling 96-6p, medical expert testimony was necessary to determine whether Plaintiff equaled a listed impairment.

Plaintiff does not state a specific listed impairment for which she believes that the ALJ should have obtained expert testimony. The ALJ's opinion contains analysis only of Listing 12.04, affective disorders; although, the ALJ also stated that he did not find sufficient evidence

to support the severity of a listed musculoskeletal or endocrine impairment.  (Tr. 15.)  Defendant argues that Plaintiff submitted no meaningful argument that her combined impairments equal a listing, and did not suggest how any medical records not reviewed by Dr. Grant would have undercut Dr. Grant's opinion.

First, the ALJ was entitled to rely on the opinion of the state agency consultant on the issue of whether Plaintiff met or equaled any listed impairment.  According to  Social Security Ruling (SSR) 96-6p, state agency medical consultants' opinions on equivalence to listings must be treated as expert opinion evidence and weighed by the ALJ.  1996 WL 374180, at *1 (S.S.A.) ("[t]he signature of a State agency medical . . . consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence . . . other documents on which medical . . . consultants may record their findings, may also ensure that this opinion has been obtained."  Furthermore, an updated medical opinion need only be obtained under certain circumstances, including when there is no additional medical evidence, "but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or when additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."

Here, neither the ALJ nor the Appeals Council indicated that the case record, with or without new evidence, suggested that a judgment of equivalence may be reasonable.

Additionally, Plaintiff has not indicated which listing(s) she believes that she meets or equals, and has not cited any evidence in the record, whether submitted before or after the hearing, in support of her bare allegation that she equals a listing.  Because Plaintiff did not connect the facts of the case to a particular listing, the argument is waived, and no further review by the court is required.  See Ball ex rel. Ball v. Astrue, No. 1:06cv00059WRW, 2008 WL 544878 (E.D.Ark. Feb. 25, 2008) (citing the following cases for the proposition that if party fails to frame and develop an issue, the argument is waived:  United States v. Zannino, 89 F.2d 1, 18 (1st Cir. 1990); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005); Murrell v. Shalala, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994); Hartmann v. Prudential Ins. Co. of America, 9 F.3d 1207, 1212 (7th Cir. 1993) (Posner, C.J.); SEC v. Thomas, 965 F.2d 825, 827 (10th Cir. 1992); Leer v. Murphy, 844 F.2d 628, 635 (9th Cir. 1988)).

### Residual functional capacity: weighing the medical source opinions

Plaintiff contends the ALJ did not rely on any treating physician's opinion but substituted his own lay opinion regarding her residual functional capacity.  Plaintiff asserts the ALJ erred by dismissing the opinion of her treating physician, Dr. McConnell.  Plaintiff contends Dr. McConnell's opinion is consistent with objective observations and evidence from her treatment records.

Defendant, on the other hand, asserts Dr. McConnell's opinion is not entitled to greater weight.  First, Defendant asserts that no other medical source, including Dr. Hanson, assessed Plaintiff with the limitations described by Dr. McConnell, based on Plaintiff's March 2007 MRI. Defendant asserts that Dr. Grant reviewed the March 2007 MRI and Dr. Hanson's treatment record and opined that Plaintiff was capable of light work.  Second, Defendant contends that Dr.

McConnell's treatment notes do not reflect objective findings to support her 2008 residual functional capacity opinion. Defendant notes that Plaintiff's physical examinations were generally unremarkable. Additionally, Defendant asserts that Plaintiff improved over time, noting her pain was "not as bad" in October 2008, and her examination was normal in December 2008. Therefore, Defendant concludes that the ALJ reasonably relied on Dr. Grant's opinion that Plaintiff could perform a range of light work.

A claimant's RFC is what he or she can do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). The ALJ must determine a claimant's RFC by considering the combination of the claimant's mental and physical impairments. See Baldwin v. Barnhart, 349 F.3d 549, 556 (8th Cir. 2003). However, it is the claimant's burden, not the Commissioner's, to prove the RFC. Pearsall v. Massanari, 274 F..3d 1211, 1217 (8th Cir. 2001) (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).

In determining a claimant's RFC, the ALJ must consider all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. Id. The RFC determination must be supported by "medical evidence that addresses claimant's ability to function in the workplace[.]" Baldwin, 349 F.3d at 556 (quoting Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)). However, the ALJ is not limited solely to consideration of medical evidence, "but is required to consider at least some supporting evidence from a professional." Baldwin, 439 F.3d at 556 (citing 20 C.F.R. § 404.1545(c)).

A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If the ALJ does not grant

controlling weight to a treating physician's opinion, the ALJ determines how much weight to

grant medical opinions by applying the following factors:

> (1) whether the source has examined the claimant; (2) the length,
> nature and extent of the treatment relationship and the frequency of
> examination; (3) the extent to which the relevant evidence,
> "particularly medical signs and laboratory findings," supports the
> opinion; (4) the extent to which the opinion is consistent with the
> record as a whole; (5) whether the opinion is related to the source's
> area of specialty; and (6) other factors "which tend to support or
> contradict the opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d), *see
> also* <u>Wagner v. Astrue</u>, 499 F.3d 842, 848 (8th Cir. 2007).]

<u>Owen v. Astrue</u>, 551 F.3d 792, 800 (8th Cir. 2008).

The ALJ stated that he did not place great weight on Dr. McConnell's opinion because it

appeared to be based entirely on Plaintiff's allegations of limitations at an October 2008 visit for

the purpose of obtaining evidence in support of her disability claim. (Tr. 19.) The ALJ noted

Dr. McConnell did not perform a physical examination to corroborate her opinion in October

2008. (<u>Id.</u>) Additionally, the ALJ stated that Plaintiff's treatment records did not support Dr.

McConnell's opinion because there were minimal objective physical findings of Plaintiff's

lumbosacral condition, that responded well to conservative treatment. (<u>Id.</u>) The ALJ also noted

that Plaintiff suffered no major episodes of hypoglycemia, and Plaintiff's allegation of weekly

hypoglycemic episodes is not supported by the record. (<u>Id.</u>) Finally, the ALJ noted there was no

objective evidence of a medical necessity for Plaintiff to elevate her legs during the day, because

edema was noted on only one occasion and did not require ongoing medical treatment. (Tr. 20.)

As Plaintiff correctly points out, her MRI of March 2007 provides objective evidence of

a disc protrusion that causes right-sided radiculopathy. As Drs. McConnell and Hanson noted,

this condition is consistent with pain and numbness radiating from the lumbar spine down the

right leg. However, contrary to Plaintiff's argument, this does not end the inquiry of whether Plaintiff's pain and functional loss is of the severity to preclude competitive employment. Dr. Grant reviewed the same March 2007 MRI results that Dr. McConnell reviewed and concluded that Plaintiff could perform a range of light work. (Tr. 306.) Thus, it was up to the ALJ to resolve the conflicting opinions. See Wagner, 499 F.3d at 849 (8th Cir. 2007) (ALJ must resolve conflict between opinions of a treating physician and a one-time consulting physician).

Despite the fact that Dr. McConnell had the benefit of a treating relationship with Plaintiff, her treatment records do not support the severity of functional loss that Dr. McConnell reported in the questionnaire she completed for Plaintiff in October 2008. Plaintiff rarely exhibited signs of severe pain or functional loss on examination. She occasionally had some limitations of range of motion and positive straight leg raise test, but she was never in acute distress, and her strength, sensation, and gait were most often normal. This is not consistent with someone who can stand for only very short periods of time. As the ALJ noted, Dr. Hanson, an orthopedic specialist, reviewed Plaintiff's MRI showing disc protrusion and nerve impingement and did not place any physical restrictions on Plaintiff. Dr. Hanson stated surgery was a treatment option; however, Plaintiff improved with exercise including swim aerobics, walking, and Tai Chi.

Additionally, Plaintiff rarely reported difficulties with low blood sugar after her alleged onset date. Dr. McConnell noted that Plaintiff recognized the symptoms of hypoglycemia and treated herself by eating or drinking when such episodes occurred. This suggests Plaintiff's diabetes did not require further restrictions. The treatment records, considered as a whole, support the ALJ's determination to grant more weight to Dr. Grant's opinion of a light residual

functional capacity than to Dr. McConnell's extreme limitation to four hours of work a day, with only one total hour of standing.

## Credibility Analysis

Plaintiff argues the ALJ failed to consider all of the Polaski factors in his credibility analysis. Defendant responds that the ALJ reasonably assessed Plaintiff's credibility concerning her daily activities and course of medical treatment, and Plaintiff has not identified anything specific that the ALJ failed to consider.

In considering a claimant's subjective complaints of disability, the ALJ must assess the claimant's credibility, applying the factors set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (vacated on other grounds by Bowen v. Polaski, 476 U.S. 1167 (1986)). The Polaski factors require the ALJ to give full consideration to all the evidence presented relating to a claimant's subjective complaints, including prior work record, and observations of third parties and treating and examining physicians relating to such matters as:

    1. the claimant's daily activities;

    2. the duration, frequency, and intensity of the pain;

    3. precipitating and aggravating factors;

    4. dosage, effectiveness, and side effects of medication; and

    5. functional restrictions.

Id.; see also Cox v. Apfel, 160 F.3d 1203, 1207 (8th Cir. 1998) (same). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." Cox, 160 F.3d at 1207. The ALJ may consider whether there is a lack of objective medical evidence to support a claimant's subjective complaints, but the ALJ cannot

rely solely on that factor in assessing the credibility of plaintiff's subjective complaints.  Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002).

"An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole." Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996) (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993.))  For example, the ALJ may find a claimant's subjective complaints inconsistent with daily activities, lack of treatment, demeanor, and objective medical evidence." Jones v. Chater, 86 F.3d 823, 826 (8th Cir. 1996); see also Cox, 160 F.3d at 1207.  If the ALJ rejects a claimant's complaint of pain, "the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony." Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991).

The failure to address each of the Polaski factors separately does not render the ALJ's determination invalid.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000) (holding that ALJ was not required to methodically discuss each Polaski consideration, so long as he acknowledged and examined those considerations).  Ultimately, the determination of a claimant's RFC, and the determination of whether a claimant is disabled are issues reserved to the Commissioner. Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010); Cox, 495 F.3d at 619.

The ALJ reviewed and summarized the evidence in the record and concluded that the objective evidence was not consistent with Plaintiff's allegations of disabling pain and incapacitating limitations.  (Tr. 15-20.)  Specifically, the ALJ noted that Plaintiff was consistently described as pleasant and in no acute distress at medical examinations.  (Tr. 20.)  He also noted that although Plaintiff had a lumbosacral spinal disorder, the objective physical examination findings were minimal and neurological findings were similarly sparse and

intermittent.  (Id.)  The ALJ noted there was only one occasion where Plaintiff had leg swelling; therefore, there was no medical necessity to elevate her legs.  (Id.)

The ALJ also found Plaintiff to have only a mild restriction in her activities of daily living.  (Tr. 16.)  He noted that she was independent in personal care, performed light housework, managed her finances, went outside the home independently, shopped, read several hours per day, played cards, used a computer, watched television, and visited family and friends. (Id.)  Additionally, Plaintiff walked for exercise, performed Tai Chi, and exercised at the Courage Center.  (Tr. 17-19.)  The ALJ concluded Plaintiff's daily activities were inconsistent with disability.  (Tr. 20.)  "[D]aily activities alone do not disprove disability, [but] they are a factor to consider in evaluating subjective complaints of pain."  Wilson v. Chater, 76 F.3d 238, 241 (1996).  The ALJ considered other factors as well.

The ALJ noted Plaintiff's improvement with conservative treatment for back pain.  (Tr. 19.)  "Impairments that are controllable or amenable to treatment do not support a finding of disability."  Kisling v. Chater, 105 F.3d 1255, 1257 (19997).  The record indicates that in August 2007, Plaintiff was exercising daily and her back pain was improving.  (Tr. 346.)  In November 2007, her chronic back pain was improving with Tai Chi.  (Tr. 343.)  Several months before Dr. McConnell wrote her opinion regarding Plaintiff's disability, Plaintiff reported that her back pain was "off and on" and "not as bad."  (Tr. 338.)  Dr. McConnell examined Plaintiff on December 8, 2008, approximately two months after she completed the disability opinion for Plaintiff, and Plaintiff had no pain complaints other than migraine headaches.  (Tr. 328-29.)  And on physical examination, Plaintiff's neurological, sensory and strength examinations were normal.  (Id.)  For most of the time period at issue, Plaintiff used only Ibuprofen for pain relief.  (Tr. 211, 237-38.)

Therefore, substantial evidence in the record supports the ALJ's decision to discount Plaintiff's pain complaints.

Plaintiff testified that she had frequent hypoglycemic episodes, but as the ALJ found, the record does not bear that out. On March 30, 2006, Plaintiff reported only occasional and mild hypoglycemia, which resolved with home treatment. (Tr. 217-18.) In a visit with Dr. McConnell on August 31, 2006, Plaintiff denied hypoglycemia. (Tr. 209.) On March 1, 2007, Plaintiff reported no hypoglycemic reactions. (Tr. 279.) In fact, there is nothing in the record during the relevant timeframe to support Plaintiff's testimony that she had hypoglycemic episodes two or three times a week. The ALJ's decision to discount Plaintiff's credibility regarding hypoglycemic reactions is fully supported by the record. Therefore, the ALJ gave good reasons for finding Plaintiff's allegations regarding the severity of her impairments and functional loss not credible, and his decision should be affirmed. See Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) ("[w]here adequately explained and supported, credibility findings are for the ALJ to make.")

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED THAT:**

1.    Plaintiff's Motion for Summary Judgment be denied  [Docket No. 15],

2.    Defendant's Motion for Summary Judgment [Docket No. 22] be granted;

3.    Judgment be entered accordingly.


Dated: January 13, 2011              s/ Arthur J. Boylan
                                     ARTHUR J. BOYLAN
                                     United States Chief Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before January 27, 2011.